{¶ 10} I respectfully dissent from the majority's decision. I believe that the trial court acted properly and I would, therefore, affirm the trial court.
 {¶ 11} Appellant argues in its brief that the trial court erred and ran afoul of Franks v. Delaware; however, I do not find Franks to be applicable to the suppression issues of the case at bar. In Franks, the defendant challenged the affidavit used to obtain the search warrant by alleging that the misstatements included in the affidavit were not inadvertent but made in "bad faith." This was not the argument made in the case at bar.
 {¶ 12} In the case at bar, the state admitted it made a mistake with the address; however, the defendant never alleged that Detective Sims' sworn statements rose to the level of bad faith. In addition, the trial court is clear in its amended ruling on appellee's motion to suppress that it did not grant the suppression based on a Frank's issue.
 {¶ 13} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. See State v. McNamara
(1997), 124 Ohio App.3d 706, 710. An appellate court is to accept the trial court's factual findings unless they are "clearly erroneous." Statev. Long (1998), 127 Ohio App.3d 328, 332. We are, therefore, required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. State v. Harris (1994),98 Ohio App.3d 543, 546. The search warrant described the place to be searched in an insufficient and inaccurate manner. Therefore, the trial court did not err when it found the warrant to be overly broad.
 {¶ 14} The trial court explained its actions in detail in its May 12, 2004 amended ruling on motion to suppress. The trial court stated in its ruling that "no testimony was presented as to what the police did before forcing entry to the house."[1] Moreover, the trial judge noted that a computer search was not conducted. The trial judge stated:
"The police did not make a search to determine whether the two-familysubdivision had been registered with the City of Cleveland. One officertestified that at the time the warrant was sought it was police practiceto consult the county's computer for further information on the house,but the computer was not functioning. If a computer search had beenconducted, the police would have learned, of course, that the housenumber was inaccurate.
 "That would have obliged the police to provide a different address forthe place to be searched under the warrant so that the warrant would befully accurate. The computer search would have revealed whether the housewas listed as a single or a two-family home. No evidence has beenpresented concerning that listing."[2]
(Emphasis added.)
 {¶ 15} The trial court went on to state that no evidence was presented that, as in Garrison,[3] an inquiry was made by the police concerning a possible conversion of the house to a two-family dwelling.[4]
 {¶ 16} The holding in Maryland v. Garrison (1987), 480 U.S. 79, turned on whether the police had made reasonable efforts to determine the nature of the dwelling before they entered. In Garrison, the court found that reasonable steps had been taken. Here, the trial court distinguished this case from Garrison in that the police in the case at bar did not make reasonable efforts to determine the nature of the dwelling before they entered.
 {¶ 17} Furthermore, the trial court ruled that "no evidence of any urgency has been presented by the State," and went on to state:
"The danger of not seeking such information is apparent from the factsin this case. The first floor occupant apparently became fearful when thepolice forced entry through his front window. In response, he shot atthem. The police shot back and injured him. A more thorough effort todetermine the nature of the occupancy and where Walter Freeman went whenentering the house should have alerted the police to the fact that theywere entering a two-family house and to the importance of not forcingentry through a first floor unit, unless that was the location of thesuspected drugs. As it was, nothing in the warrant or affidavit showedthat drugs were expected to be found in the portion of the premisesseparately leased to or occupied by the defendant." (Emphasis added.)
 {¶ 18} The police failed to act reasonably in their efforts to obtain the search warrant. There was no evidence presented as to whether the home was registered as a two-family home. A computer search was never conducted and there was never any evidence of urgency presented by the state. This resulted in the creation of a dangerous situation that possibly could have been mitigated. Had the urgency issue been addressed prior to the SWAT entry, the shooting may have been entirely avoided. Moreover, the police never saw appellee interact with Mr. Freeman, the man who sold to the undercover agent. At the time the police chose to search appellee's apartment, all they knew was that he lived in close proximity to where a controlled drug buy occurred.
 {¶ 19} The evidence demonstrates that the trial court's actions were competent and credible. I believe that the trial court acted properly when it found the search warrant to be overly broad. I would, therefore, overrule appellant's assignments of error.
[1] See trial court's amended ruling on motion to suppress, May 12, 2004, p. 2.
[2] See trial court's amended ruling on motion to suppress, May 12, 2004, p. 4.
[3] Maryland v. Garrison (1987), 480 U.S. 79.
[4] See trial court's amended ruling on motion to suppress, May 12, 2004, p. 5.